IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ERIC CAMP,<br><br>Plaintiff,<br><br>vs.<br><br>CORE COMMUNITY ORGANIZED RELIEF EFFORT, INC.,<br><br>Defendant. | : | Civil Action Number: |

## COMPLAINT

Plaintiff Eric Camp (hereafter "Camp") submits this Complaint against CORE Community Organized Relief Effort, Inc. (hereafter "CORE") and shows the Court as follows:

## Introduction

1.

This is a USSERA case. It is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 *et seq*., as amended, (USERRA). Plaintiff alleges herein that CORE unlawfully imposed adverse employment actions on him because of his reserve status in the United States National Guard.

## Jurisdiction and Venue

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution, 38 U.S.C. § 4323(a)(3) and 28 U.S.C. § 1331, because this case arises under USERRA, a federal statute enacted pursuant to War Powers Clause of the Constitution.

3.

Venue properly lies in the Northern District of Georgia under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims herein arose in this judicial district.

## Parties

4.

Camp resides within Fulton County, Georgia.

5.

CORE is a foreign nonprofit corporation organized under the laws of the State of California.

6.

CORE is authorized to do business in Georgia.

7.

CORE maintains a place of business within the Northern District of Georgia.

8.

CORE is subject to the personal jurisdiction of this Court.

9.

At all times material hereto, CORE has been an organization that pays wages for work performed.

10.

At all times material hereto, CORE has been a covered "employer" as defined by 38 U.S.C. § 4303(4).

11.

At all times material hereto, Camp was a "covered employee" within the meaning of USERRA, 38 U.S.C. § 4303(3).

12.

CORE may be served with process through its registered agent, Dedrick Muhammad, 4700 North Point Parkway, Alpharetta, Georgia 30005.

**Factual Allegations**

13.

CORE provides disaster relief and administers vaccinations, testing and essential resources to marginalized and lower income communities.

14.

CORE employed Camp from July 2020 until April 9, 2021.

15.

CORE hired Camp to serve as Program Associate and then twice promoted him, first to serve as a Contact Tracer, and then to serve as CORE's North Fulton County Site Developer.

16.

Camp enlisted in the United States National Guard as a reserve soldier in March 2016.

17.

At all times material hereto, CORE has been aware that Camp has been a reserve soldier with the United States National Guard.

18.

Upon hire, Camp provided CORE with his military training and drill schedule setting forth the dates that he was expected to be away from work for training, drills, and other military related service.

19.

At all times material hereto, CORE has been aware that Camp's reserve soldier status required that he be away from work from time to time for training, drills, and other military related service.

20.

At all times material hereto, Camp provided CORE with advanced notice of his military training and drill schedule and advised that he would be required to be periodically absent from work on those dates.

21.

At all times material hereto, Camp reminded CORE of his scheduled military training and drill schedule a few days to a week before he was required to be absent from work for any scheduled training, drills, and other military related service.

22.

In or about late February 2021 or early March 2021, Camp reminded his direct supervisor at CORE, Georgia Area Site Development Manager John Dannehl, Georgia Area Site Development Supervisor Julia Marshall, and CORE's Human Resources Department of his need to be away from work from March 4, 2021 through March 7, 2021 for military duty.

23.

On March 22, 2021, Camp participated in a conversation with his John Dannehl and Julia Marshall, via the internet communication provider Zoom.

24.

During this Zoom call, Dannehl stated that he understood that CORE needed a full-time staff member in the position of North Fulton County Site Developer.

25.

During this Zoom call, Dannehl stated that Camp's reserve obligations prevented him from being the full-time employee that CORE needed.

26.

During this Zoom call, Dannehl stated that "A complaint has been lodged with HR about moving forward with vaccine work. We need a full time staff member and based on your commitments with the National Guard I think we have a bit of a conflict given that there are some dates that you have your projects and assignments with the National Guard".

27.

During this Zoom call, Dannehl offered Camp the option of being converted to a lower ranked position that was both part time and at a lower pay rate than the North Fulton County Site Developer position.

28.

During this Zoom call, Dannehl advised Camp that if he did not agree to being converted to a lower ranked position that was both part time and at

a lower pay rate than the North Fulton County Site Developer position, that CORE would immediately place Camp on a performance improvement plan.

29.

During this Zoom call, Camp advised Dannehl that as a member of the US military, he was entitled to be away from work for training, drills and other military related activity without loss of his position, rate of compensation or benefits.

30.

Prior to this ZOOM call, CORE had never informed Camp that any of his actions or his work performance was unsatisfactory, inappropriate or in need of improvement.

31.

On March 29, 2021, Camp participated in a conversation with Dannehl and CORE's Fulton County Human Resources Manager, Emily Saugstad, via the internet communication provider Zoom.

32.

During this Zoom call, Dennell advised Camp that CORE was placing him on a performance improvement plan.

33.

During this Zoom call, Dannehl advised Camp that he would be on the performance review plan for two weeks.

34.

During this Zoom call, Dannehl advised Camp that during the two-week period, he wanted Camp to focus on responding promptly to partners within 24 hours; completing tasks within a given timeframe; asking for help from team members and others if he had any issues completing an assigned task; and speaking professionally and respectfully with team members and partners.

35.

Prior to this ZOOM call, CORE had never counseled, warned, suspended, or otherwise disciplined Camp for failing to respond promptly to a partner with 24 hours.

36.

Prior to this ZOOM call, CORE had never counseled, warned, suspended, or otherwise disciplined Camp for failing to complete tasks in a given timeframe.

37.

Prior to this ZOOM call, CORE had never counseled, warned, suspended, or otherwise disciplined Camp for failing to seek help from team members when confronted with issues in completing an assigned task.

38.

Prior to this ZOOM call, CORE had never counseled, warned, suspended, or otherwise disciplined Camp for speaking unprofessionally or disrespectfully with team members.

39.

Prior to this ZOOM call, CORE had never provided Camp with an unsatisfactory performance review.

40.

During this Zoom call, Camp asked for information related to specific incidents wherein he had been unprofessional and/or disrespectful.

41.

During this Zoom call, Camp asked Dannehl and Saugstad to provide an example of specific incidents where he had responded to a partner in greater than 24 hours.

42.

During this Zoom call, Dannehl and Saugstad declined to identify specific instances where Camp had failed to respond to a partner in greater than 24 hours.

43.

During this Zoom call, Camp asked Dannehl and Saugstad to provide an example of specific instances where had not completed a task within in a given time frame.

44.

During this Zoom call, Dannehl and Saugstad declined to identify specific instances where Camp had not completed a task within in a given time frame.

45.

During this Zoom call, Camp asked Dannehl and Saugstad to provide an example of specific instances where had failed to seek help from team members when confronted with issues in completing an assigned task.

46.

During this Zoom call, Dannehl and Saugstad declined to identify specific instances where Camp had failed to seek help from team members when confronted with issues in completing an assigned task.

47.

During this Zoom call, Camp asked Dannehl and Saugstad to provide an example of specific instances where Camp had spoken unprofessionally or disrespectfully with team members or partners.

48.

During this Zoom call, Dannehl and Saugstad declined to identify specific instances where Camp had spoken unprofessionally or disrespectfully with team members or partners.

49.

During this Zoom call, Saugstad advised Camp that she would provide him with additional information related to specific reports of his purported acts of unprofessionalism and/or disrespectful interactions with other co-workers and/or team members.

50.

Since this Zoom call Saugstad has failed to provide Camp with any additional documentation or information related to his purported acts of unprofessionalism and/or disrespectful interactions with other co-workers and/or team members.

51.

On Friday, April 9, 2021, CORE terminated Camp's employment.

52.

CORE's purported reasons for Camp's termination were pretextual.

53.

CORE terminated Camp for exercising his rights under USERRA including, but not limited to, his right to take leave from his employment to

tend to military related responsibilities, his right to deploy pursuant to valid orders, and his right to be reinstated after completion of his military duties.

54.

CORE would not have terminated Camp on April 9, 2021 but for Camp's request for military leave of absence as needed for training, drills, and other military related service.

55.

Camp's termination was in bad faith and in direct violation of his rights under USERRA.

56.

As the direct and foreseeable result of CORE's above-stated actions, Camp has been deprived of employment opportunities, wages, health care insurance benefits and retirement benefits.

## Count One – Interference with Rights Protected by USERRA

57.

The allegations in all previous paragraphs are incorporated herein by reference as if fully set out in this paragraph.

58.

Camp is entitled to the benefits and protections of USERRA on account of his service in the uniformed services of the United States.

59.

By notifying CORE in advance of his upcoming training, drills, and other military related duties, Camp gave proper notice of his need for military leave under USERRA.

60.

By notifying Dannehl and Marshall, and CORE's Human Resources Department in advance of his upcoming training, drills, and other military related duties, Camp gave proper notice of his need for military leave under USERRA.

61.

CORE's actions constitute willful interference in Camp's rights under USERRA including, but not limited to 38 U.S.C. § 4316(b)(1)(A).

62.

CORE's actions have deprived Camp of his income, health insurance, prospective retirement benefits, social security, and other benefits due to him.

63.

As a legal consequence of CORE's unlawful conduct, Camp is entitled to both equitable and monetary relief for CORE's violation of USERRA, as set out at USERRA, 38 U.S.C. § 4323(d)(1)(C)., including, but

not limited to, back pay, reinstatement or front pay, liquidated damages and reimbursement for his reasonable attorneys' fees and costs of litigation.

## Count Two – Discrimination In Violation of USERRA

64.

The allegations in all previous paragraphs are incorporated herein by reference as if fully set out in this paragraph.

65.

USERRA prohibits CORE from discriminating against any person because such person who exercised a right provided by USERRA. (38 U.S.C. § 4311(b)).

66.

CORE discriminated against Camp in violation of 38 U.S.C. § 4311(b) when it placed him on a performance improvement plan on March 29, 2021.

67.

CORE willfully discriminated against Camp in violation of 38 U.S.C. § 4311(b) when it placed him on a performance improvement plan on March 29, 2021.

68.

CORE discriminated against Camp in violation of 38 U.S.C. § 4311(b) when it terminated his employment on April 9, 2021.

69.

CORE willfully discriminated against Camp in violation of 38 U.S.C. § 4311(b) when it terminated his employment on April 9, 2021.

70.

As a legal consequence of CORE's unlawful conduct, Camp is entitled to both equitable and monetary relief for CORE's violation of USERRA, as set out at USERRA, 38 U.S.C. § 4323(d)(1)(C)., including, but not limited to, back pay, reinstatement or front pay, liquidated damages and reimbursement for his reasonable attorneys' fees and costs of litigation.

**Count Three – Retaliation In Violation Of USERRA**

71.

The allegations in all previous paragraphs are incorporated herein by reference as if fully set out in this paragraph.

72.

USERRA prohibits CORE from taking adverse employment action against any person because such person exercised a right provided by USERRA (38 U.S.C. § 4311(b)).

73.

CORE retaliated against Camp in violation of 38 U.S.C. § 4311(b) when it placed him on a performance improvement plan on March 29, 2021.

74.

CORE willfully retaliated against Camp in violation of 38 U.S.C. § 4311(b) when it placed him on a performance improvement plan on March 29, 2021.

75.

CORE retaliated against Camp in violation of 38 U.S.C. § 4311(b) when it terminated Camp on April 9, 2021.

76.

CORE willfully retaliated against Camp in violation of 38 U.S.C. § 4311(b) when it terminated Camp on April 9, 2021.

77.

As a legal consequence of CORE's unlawful conduct, Camp is entitled to both equitable and monetary relief for CORE's violation of USERRA, as set out at USERRA, 38 U.S.C. § 4323(d)(1)(C)., including, but not limited to, back pay, reinstatement or front pay, liquidated damages and reimbursement for his reasonable attorneys' fees and costs of litigation.

WHEREFORE, Camp respectfully requests that the Court enter judgment against CORE as follows:

1. Declare that CORE's failure to grant Camp leave for the purpose of training, drills, and other military related service is unlawful and in violation of USERRA;
2. Declare that CORE's failure to retain Camp, an active duty member of the United States National Guard, in its employ is unlawful and in violation of USERRA;
3. Declare that CORE's issuance of the performance improvement plan to Camp constitutes unlawful discrimination against Camp in violation of USERRA;
4. Declare that CORE's issuance of the performance improvement plan to Camp constitutes unlawful retaliation against Camp in violation of USERRA;
5. Declare that CORE's termination of Camp constitutes unlawful discrimination against Camp in violation of USERRA;
6. Declare that CORE's termination of Camp constitutes unlawful retaliation against Camp in violation of USERRA;
7. Order that CORE fully comply with USERRA by reinstating Camp at the level of seniority, status and compensation he enjoyed at the time of his discharge, or provide appropriate front pay;
8. Order that CORE be enjoined from engaging in further unlawful employment practices in violation of the USERRA;

9. Order that CORE pay Camp appropriate compensatory damages pursuant to 43 U.S.C. § 4323(d)(1)(B), sufficient to make Camp whole for lost pay, lost health care insurance benefits and lost retirement benefits, and other out of pocket losses, together with interest thereon, incurred as a result of CORE's unlawful employment practices in violation of the USERRA;
10. Order that CORE reinstate Camp to the position of North Fulton County Site Developer, with out loss of work hours or pay;
11. Enjoin CORE from taking any employment action against Camp that fails to comply with the provisions of USERRA;
12. Order that CORE reimburse Camp for his costs of litigation, including his reasonable attorneys' fees and expert witness fees, pursuant to 38 U.S.C. § 4323(h)(2); and
13. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC**

*<u>/s/ Kevin D. Fitzpatrick, Jr.</u>*

Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375
Charles R. Bridgers
Georgia Bar No. 080791

101 Marietta Street, NW
Suite 2650
Atlanta, GA 30303
(404) 979-3150 Telephone
(404) 979-3170 Facsimile
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com

Counsel for Plaintiff